IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ER ADDISON LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-01828-N |
| | § | |
| CIGNA HEALTHCARE OF TEXAS, INC., *et al.* | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendants Cigna HealthCare of Texas, Inc., Cigna Health Management Inc., and Connecticut General Life Insurance Company's (collectively, "Cigna") motion to dismiss [72]. For the following reasons, the Court grants Cigna's motion in part and denies in part.

## I. ORIGINS OF THE MOTION

This case involves a dispute between a cluster of free-standing emergency centers, their associated physician groups, and insurance providers. Plaintiffs ER Addison, LLC, ER Hulen, LLC, ER Coit, LLC, and ER NearMe Plano, LLC (collectively, "ER") are free-standing emergency centers ("FECs"), which like traditional hospital-based emergency departments, provide patients with emergency care. Pls.' Second Am. Compl. ¶ 15 [68]. However, unlike traditional hospitals, FECs do not have to be attached to or owned by a hospital. *Id.* Important for this case, many FECs also operate as "out-of-network" providers. *Id.* ¶ 24. This means that they do not have contractual arrangements with

healthcare insurers, and instead, set their own charges for services. *Id.* ¶ 21. An "in-network" provider, on the other hand, provides services to the insured parties at pre-negotiated, discounted rates. *Id.* ¶ 20. For patients, this usually means that going to an "in-network" provider costs less than going to an "out-of-network" provider whose services are not discounted and may not even be covered by the insurer at all. *Id.* ¶ 21.

Here, ER provides emergency services to Cigna members on an out-of-network basis because they do not have any contractual relationships with Cigna. *Id.* ¶ 26. ER alleges that Cigna underpaid them on 2,055 claims for services they provided between February 24, 2019, and June 30, 2022. Defs.' Mot. Dismiss 3 [72]. ER brings claims for violation of ERISA[1] payment obligations (Count I), breach of contract as to non-self-funded ERISA plan claims (Count II), negligent misrepresentation (Count III), unjust enrichment (Count IV), and an award of attorney's fees and costs under ERISA (Count V). Cigna now moves to dismiss all counts. Defs.' Mot. Dismiss 1.

## II. RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461.

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

## III. Rule 12(b)(1) Legal Standard

Under the United States Constitution, a federal court may decide only actual "cases" or "controversies." U.S. Const. art. III, § 2. A court properly dismisses a case where it lacks the constitutional power to decide it. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The justiciability doctrines of standing, mootness, political question, and ripeness all originate in Article III's 'case' or 'controversy' language." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal quotation marks omitted)). "Standing and ripeness are required elements of subject matter jurisdiction and are therefore properly challenged on a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss." *Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 415–16 (N.D. Tex. 2013) (citing *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989); *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 350 (S.D. Tex. 2011)).

The standing requirement has three elements: (1) injury in fact, (2) causation, and (3) redressability. *See Bennett v. Spear*, 520 U.S. 154, 167 (1997). The injury cannot be merely "conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Causation requires that the injury "fairly can be traced to the challenged action of the defendant" rather than to "the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976). And redressability requires that it is likely, "as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *id*. at 38, 43).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). The standard for reviewing a Rule 12(b)(1) motion depends on whether the defendant makes a facial or factual attack on the plaintiff's complaint. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When "'standing is challenged on the basis of the pleadings,' [courts] must 'accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party.'" *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)). A factual attack, however, may be based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Herbert*, 60 F.4th 281, 284 (5th Cir. 2023) (quoting *Ramming*,

281 F.3d at 161). Moreover, when "a defendant makes a factual attack, the plaintiff 'has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.'" *Id.* (quoting *Paterson*, 644 F.2d at 523).

## IV. THE COURT GRANTS IN PART AND DENIES IN PART CIGNA'S MOTION TO DISMISS

Cigna moves to dismiss all counts. For the foregoing reasons, the Court denies Cigna's motion to dismiss Count I, partially grants Cigna's motion to dismiss Count II, and grants Cigna's motion as to Count III and Count IV.

### *A. The Court Denies Cigna's Motion to Dismiss Count I*

In Count I, ER alleges that Cigna violated its payment obligations under section 502 of ERISA. Pls.' Second Am. Compl. ¶¶ 89–99. Section 502 allows a participant or beneficiary covered by a welfare plan to sue to "recover benefits due . . . under the terms of his plan, to enforce rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." *Id.* (quoting 29 U.S.C. § 1132(a)(1)(B)). ER claims that Cigna has violated the plain terms of its plans by significantly underpaying claims for the out-of-network services provided to Cigna members and failed to remit payment for "those claims at the usual and customary level that its plans require." Pls.' Second Am. Compl. ¶ 93. It also claims that Cigna violated the Affordable Care Act's ("ACA") greatest-of-three requirement and that it has exhausted administrative remedies under ERISA or are excused to do so under the futility doctrine. *Id.* ¶¶ 94–95.

The Court first notes at the outset that this district decided a very similar case to this one only a few months ago. *See Er Addison, LLC v. Aetna Health, Inc*, 2026 WL 948511,

at *3 (N.D. Tex. 2026). In *Aetna Health*, a group of free-standing ER's, including several of the FECs who filed this suit, brought claims against Aetna Health and various other health insurers. *See id.* at *3. Just as here, the plaintiffs in *Aetna* alleged that the insurers underpaid for health care services. *Id.* at *1. In fact, the *Aetna* plaintiffs brought almost identical claims as ER brings now, often with word-for-word parity between the pleadings. Though this Court exercises its own judgment, it finds the *Aetna* court's reasoning highly persuasive. *Planned Parenthood Surgical Health Servs. v. City of Lubbock*, 542 F. Supp. 3d 465, 483 (N.D. Tex. 2021) (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in . . . the same judicial district.")).

Cigna makes three arguments as to why ER's ERISA based claims ought to be dismissed under Rule 12(b)(6) and Rule 12(b)(1), which the Court will address in turn. First, Cigna argues that Count I should be dismissed because ER has not identified any plan provisions entitling them to the reimbursement they seek. Defs.' Mot. Dismiss 4. "As a general rule, a plaintiff asserting an ERISA benefits claim 'must provide the court with enough factual detail to determine whether the services were indeed covered services under the plan.'" *Windmill Wellness Ranch, L.L.C. v. Blue Cross & Blue Shield of Texas*, 2020 WL 7017739, at *5 (W.D. Tex. 2020) (citing *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, 2012 WL 5868249, at *2 (N.D. Tex. 2012)). "Absent such allegations, a complaint fails to state a claim under ERISA § 502(a)(1)(B)." *MedARC, LLC v. Anthem, Inc.*, 2021 WL 3477352, at *11 (N.D. Tex. 2021) (quoting *Tex. Gen. Hosp., LP v. United Healthcare Services, Inc.*, 2016 WL 3541828, at *4 (N.D. Tex. 2016)).

However, ERISA plaintiffs in this circuit are not held to an excessively burdensome pleading standard that requires them to identify particular plan provisions. *See Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross Blue Shield of Geogia, Inc.*, 892 F.3d 719, 728 (5th Cir. 2018). This is because it may be extremely difficult for plaintiffs to obtain access to plan provisions. *Id.* "Alleging improper reimbursement based on representative plan provisions . . . may be sufficient to show plausibility under *Twombly* and *Iqbal* when there are enough other factual allegations in the complaint to allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 728 (internal quotations omitted).

After reviewing the record, the Court determines that the allegations are sufficient at this stage to plausibly allege an ERISA violation claim. *See Aetna Health*, 2026 WL 948511, at *9. ER pleads that Cigna "has violated the plain terms of its plans and abused its discretion in administration of the plans at issue by significantly underpaying claims for the out-of-network services provided to CIGNA members from FECs, including Plaintiffs. CIGNA has failed to remit payment for those claims at the usual and customary level that its plans require." Pls.' Second Am. Compl. ¶ 93. It further states that "[u]nder the terms of the CIGNA Plans, CIGNA members are entitled to a benefit consisting of coverage for emergency care and payment consistent with the plan document and other legal requirements." *Id.* ¶ 97. This pleading is *nearly identical* to that which the *Aetna* court found sufficient. *See Aetna Health*, 2026 WL 948511, at *9.

The Court further notes that ER also plead that it, "on multiple occasions," requested the underlying plan documents and used "publicly available information to make claims."

Pls.' Second Am. Compl. ¶ 41. *See Taylor v. Vayyar Imaging U.S. Inc.*, 2026 WL 2497345, at *4 (N.D. Tex. 2026) (granting motion to dismiss where plaintiff *failed* to allege any attempt to gain access to plan terms or documents); *Texienne Physicians Med. Ass'n, PLLC v. Health Care Serv. Corp.*, 2023 WL 2799726 (N.D. Tex. 2023) (granting motion to dismiss where plaintiff *did not* plead an attempt and failure to obtain health insurance plans or policy documents). ER's attempts to obtain access to the plan documents adds further support to the Court's conclusion that ER has plausibly stated an ERISA claim under Rule 12(b)(6).

Second, Cigna argues that ER's claims should be dismissed for various issues with the Texas Emergency Care Statutes and the Affordable Care Act ("ACA"). Defs.' Mot. Dismiss 7. Namely it posits Texas Emergency Care statutes are inapplicable, that the definition of "emergency services" under ACA does not include FECs, that the "Greatest of Three Rule" is inadequately addressed by the pleadings, and that ACA, if it applies, does not permit a private right of action. *Id.* at 7–9. However, that Cigna disagrees with ER's proposed interpretation of these statutes does not render the claims implausible. *See Iqbal*, 556 U.S. at 678; *see also Piney Woods ER III, LLC v. Blue Cross & Blue Shield of Texas*, 2021 WL 7184947, at *4 (E.D. Tex. 2021) ("While Defendant's interpretations of the [Texas Administrative Code, Texas Insurance Code and ACA] may, at a later stage, be deemed correct, its argument that these statutes cannot or do not mean what Plaintiffs claim they mean does not mandate dismissal at the motion to dismiss stage."). The questions regarding the extent and implications of the applicability of ACA and Texas Emergency Care statutes can be determined at a later stage of this case. *Aetna Health*, 2026 WL

948511, at *9 (rejecting similar arguments on the basis that the court could decide them at a later stage). Accordingly, the Court rejects this ground for dismissal of ER's ERISA claims.

Third, Cigna argues that ER lacks standing under ERISA because it cannot establish valid assignment. Defs.' Mot. Dismiss 10. It says that many of the plans contain anti-assignment provisions, and ERISA estoppel does not apply. Defs.' Mot. Dismiss 10. ER responds, quoting it's pleading, that "at least a portion of the CIGNA plans associated with the claims do not contain purported anti-assignment provisions" and that for those that do, the provisions are ambiguous. Pls.' Response 12. It also claims that it has sufficiently pled allegations to support estoppel under *Hermann*, which is distinct from ERISA estoppel. *Id.* at 12–13; *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 574 (5th Cir. 1992).

In *Hermann*, a hospital sued an insurance company, MEBA, as an assignee of a patient who was covered by MEBA. *Id.* The hospital "maintained continuous communication with MEBA, attempting to obtain periodic payments on the claim, but MEBA kept postponing payment, asserting that it was" conducting an investigation. *Id.* MEBA asserted the anti-assignment clause for the first time as the basis for refusal to pay only after the hospital sued. *Id.* Moreover, the court emphasized that the hospital was "not privy to" the plans and had not opportunity to review the documentation. *Id.* The Fifth Circuit held that because "MEBA failed to assert the anti-assignment clause until more than three years after Hermann first requested payment, it [was] estopped to do so." *Id.* Years later, the Fifth Circuit further explained that "ERISA estoppel and estoppel under

*Hermann*" are distinct legal theories. *Angelina Emergency Med. Assocs. PA v. Blue Cross & Blue Shield of Alabama*, 156 F.4th 505, 519 (5th Cir. 2025). *Hermann* estoppel is based "on the equitable principle that a plan could not wait for years to assert an anti-assignment clause that the third party bearing the assignment had no way of learning about." *Id.*

The Court determines that ER has sufficiently pled standing. Cigna does not seem to contest that ER has standing for the plans which do not contain anti-assignment provisions. And for those that do contain such provisions, at this stage, ER has sufficiently pled *Hermann* estoppel. ER pleads that it did not have copies of or is privy to the plans. Pls.' Second Am. Compl. ¶ 40. It further states that it has "submitted health care claims to CIGNA for payment for years" and that during this "multi-year" course of dealing, Cigna has never asserted any anti-assignment provision "as a bar to, or basis for denial of payment." *Id.* ¶ 42. At the motion to dismiss stage, the Court finds that these facts are sufficient to defeat any standing argument. Accordingly, the Court denies Cigna's motion to dismiss on this ground.

In sum, the Court rejects all three of Cigna's general arguments as to why ER's ERISA claims must be dismissed and denies the motion to dismiss as to Count I.

### *B. The Court Denies Cigna's Motion to Dismiss Count II*

Next, ER brings breach of contract claims as to "non-self-funded ERISA plan claims" against Cigna in Count II. Pls.' Second Am. Compl. ¶¶ 100–05. Cigna moves to dismiss, arguing both that ER lacks standing under Rule 12(b)(1) and that ER fails to state a plausible claim under Rule 12(b)(6).

Again, *Aetna* is instructive here. *Aetna Health*, 2026 WL 948511, at *4–5. There, the court differentiated between the plaintiffs' breach of contract claims based on pre-2020 services and those based on post-2019 services because of the effect of the Emergency Care Statutes.[2] Starting with the post-2019 claims, it found that the plaintiffs lacked standing as assignees of Aetna's insured patients because the insured did not suffer, and would not suffer, any concrete financial injury as a result of Aetna's failure to compensate the plaintiffs at a usual and customary rate. *See Aetna Health*, 2026 WL 948511, at *7–8. That is, the Emergency Care Statutes shielded the insured from liability for out-of-network costs, and any insurance claims relating to services after January 1, 2020, could not be balance billed against them. *Id.* at *7. Put simply, because the insured patients suffered no concrete injury, there was no cause of action that could be assigned to the plaintiffs. *Id.* ER encounters the same issue here with its post 2019 claims.

According to the second amended complaint, Cigna member patients assigned their benefits under their plans to Plaintiffs. Pls.' Second Am. Compl. ¶ 101. This is the purported basis for standing. *Id.* ¶ 101 ("Plaintiffs, therefore, have standing in their capacity as assignee to enforce the terms of the non-ERISA CIGNA Plans."). However, as in *Aetna*, the patients must have suffered an Article III injury as a result of Cigna's failure to compensate ER at the "usual and customary rate." *Aetna Health*, 2026 WL 948511, at *7–8. The Court determines that they have not. The Emergency Care Statutes shield the

---

[2] In 2019, the Texas legislature amended provisions of the insurance code to address payment disputes between out-of-network emergency care providers and insurance companies. *See Aetna Health*, 2026 WL 948511, at *4.

insured from liability for out-of-network coverage costs and prohibit balance-billing for any insurance claims relating to services provided post-2019. TEX. INS. CODE ANN. § 1301.155(d). Patients therefore suffer no harm from the alleged underpayment here because they cannot be charged the balance. Accordingly, because there is no concrete financial injury, the Court dismisses the breach of contract claim for post-2019 services.

Plaintiffs also bring breach of contract claims for pre-2020 services, which the Court will now address. Turning back to *Aetna*, the court began its analysis of the pre-2020 breach of contract claims by finding that the pleadings adequately alleged a failure to comply with the payment terms set out in the insurance plans. *Aetna Health*, 2026 WL 948511, at *5. It then stated that there was no conflict with the Emergency Care Statutes because the allegations were limited to Aetna's payment obligations under its own plans, not Texas law more broadly. *Aetna Health*, 2026 WL 948511, at *5 ("Pursuant to Aetna plans, Aetna agreed . . ."); *Dallas Med. Ctr., LLC v. Molina Healthcare, Inc.*, 2021 WL 5071830, at *6 (Tex. App. — Dallas Nov. 2, 2021, pet. denied) (mem. op.) (finding that breach of contract claims arose from the Emergency Care laws where the pleadings sought reimbursement in accordance with contracts and Texas law).

The court, however, did not stop there. It then noted that ERISA's civil enforcement provision, section 502, completely pre-empts any duplicate, supplemental, or supplanting state law cause of action. *Aetna Health*, 2026 WL 948511, at *14; *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("Any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.").

Accordingly, it held that any of the breach of contract claims *based on denial of benefits under an ERISA-regulated benefit plan* were pre-empted. *Id.* Only those breach of contract claims *not* based upon benefits claims related to an ERISA plan survived the motion to dismiss. *Id.* at 15.

This Court comes to the same conclusion. Just as in *Aetna*, ER's complaint alleges Cigna failed to pay in accordance with the terms of their insurance contracts, and the allegations are limited to Cigna's obligations under its *own plans*. Pls.' Second Am. Compl. ¶ 102 ("*Pursuant to CIGNA Plans*, CIGNA agreed . . .") (emphasis added). Specifically, ER's breach of contract claims seek "the amounts required by the Cigna plans." Pls.' Second Am. Compl. ¶ 104. Accordingly, the Court finds that ER's breach of contract claims for pre-2020 services survive Cigna's motion to dismiss insofar as they are not pre-empted by section 502. Put succinctly, the Court dismisses ER's state-law breach of contract claims based on benefits claims related to an ERISA plan, but any breach of contract claims unrelated to an ERISA plan remain pending.

### *C. The Court Grants Cigna's Motion to Dismiss Count III*

Next, Cigna moves to dismiss ER's claim for negligent misrepresentation. *See* Defs.' Mot. Dismiss 19–22. To state a claim under Texas law for negligent misrepresentation, the plaintiff must show: "(1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the

representation." *TIB-The Indep. BankersBank v. Canyon Cmty. Bank*, 2014 WL 145284, at *5 (N.D. Tex. 2014); *Er Addison, LLC v. Aetna Health, Inc*, 2026 WL 948511, at *3 (N.D. Tex. 2026).

*Aetna* is instructive once again. There, the court dismissed the plaintiffs' negligent misrepresentation claims on the ground that all of the misrepresentations occurred *after* Aetna's insureds purchased their insurance policies, received emergency services at [plaintiffs'] FECs, and submitted claims to Aetna. *Id.* at *3. Moreover, "insofar as [plaintiff] was asserting a non-derivative negligent misrepresentation claim of its own, it failed to plausibly plead that it suffered pecuniary loss by justifiably relying on any misrepresentation." *Id.* Being as the claims are nearly identical, this Court follows the lead of the *Aetna* court.

ER contends that Cigna provided numerous material misrepresentations at all times "during the request for payment, review of the claims, during negotiations and during an appeals process." Pls.' Second Am. Compl. ¶ 107. It then states that ER, as "assignees of the insureds' claims," relied on Cigna's misrepresentations in attempting to determine coverage for Cigna member patients. *Id.* ¶ 111. However, as in *Aetna*, the Court agrees that the alleged injury here did not accrue until *after* ER's patients purchased their polices, received emergency services at ER's FECs, and submitted claims to Cigna. *See Aetna Health*, 2026 WL 948511, at *3. Thus, ER has not plausibly alleged that Cigna's insured justifiably relied on any alleged misrepresentation.

To the extent that ER is asserting a nonderivative negligent misrepresentation claim of its own, it also has failed to plausibly plead that it suffered pecuniary loss by justifiably

relying on any misrepresentation. Pls.' Second Am. Compl. ¶ 113. Just as the plaintiffs in *Aetna*, ER seems to contend that by providing false or misleading reasons for denying the claims of its insured, Cigna somehow misled ER regarding "whether and how to seek proper compensation for their services." *See Aetna Health*, 2026 WL 948511, at *3–4; Pls.' Response 22 [77]. However, ER has not plausibly shown harm as a result of Cigna's alleged misrepresentations beyond the fact that the claims were denied. Accordingly, the Court dismisses ER's negligent misrepresentation claim.

### *D. The Court Grants Cigna's Motion to Dismiss Count IV*

Next, Cigna moves to dismiss ER's unjust enrichment claim, Count IV. Cigna argues that an unjust enrichment claim cannot survive if it duplicates another available remedy, such as breach of contract. Defs.' Mot. Dismiss 23. The Court agrees.

"The law is clear that quasi-contractual claims are unavailable when a valid, express contract governing the subject matter of the dispute exists." *See Aetna Health*, 2026 WL 948511 (quoting *Quintel Tech., Ltd. v. Huawei Techs. USA, Inc.*, 2018 WL 446320, at *7 (E.D. Tex. 2018)). "A party can plead legal and equitable claims in the alternative, but only when one party disputes the existence of a contract governing the dispute." *TIB—The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014) (quoting *Taliaferro v. Samsung Telecomms. Am., LLC*, 2012 WL 169704, at *9 (N.D. Tex. 2012)). Because a contract, Cigna's plan documents, governs this dispute, alternative pleading is not available. Accordingly, the Court grants Cigna's motion to dismiss Count IV for unjust enrichment.

### *E. Statute of Limitations*

As a final matter, the Court addresses Cigna's statute of limitations arguments. Cigna argues that a four-year limitation period should apply and bar any ERISA or breach of contract claim that accrued before July 17, 2020. Defs.' Mot. Dismiss 9.[3] ER fails to address these arguments in its response.

The court in *Piney Woods* encountered a similar issue. *Piney Woods ER III, LLC v. Blue Cross & Blue Shield of Texas*, 2021 WL 7184947, at *5 (E.D. Tex. 2021). There, the defendant argued that the applicable statute of limitations barred plaintiffs' ERISA and breach of contract claims, but failed to identify any specific claims in the amended complaint which were barred. *Id.* The court first acknowledged that "claims that are plainly time-barred will not be allowed to proceed in this lawsuit." *Id.* However, it then found that "the issue of what, if any, of the plaintiffs [] claims are barred by the applicable statute of limitations requires evidence outside of the amended complaint and is therefore more appropriate at the . . . summary judgment stage." *Id.* The Court here agrees with the approach of the *Piney Woods* court. Accordingly, it states generally that claims which have accrued outside of the applicable statute of limitations will be dismissed as time barred. However, because it cannot dismiss discrete claims based on specific facts, it denies Cigna's motion to dismiss based on the statute of limitations at this stage.

[3] Because the Court dismisses Count III and Count IV, it does not address the statute of limitations for these claims.

## CONCLUSION

For the reasons stated above, the Court denies Cigna's motion to dismiss Count I, partially grants Cigna's motion to dismiss Count II, and grants Cigna's motion to dismiss as to Count III and Count IV. Because ER has already amended its complaint twice, the Court determines it has already had an opportunity to plead its best case, and therefore dismisses these claims with prejudice.

Signed November 10, 2026.

David C. Godbey
Senior United States District Judge